## WHEELER v. RAILROAD RETIREMENT BOARD.

### No. 14081.

United States Court of Appeals
Eighth Circuit.

Sept. 14, 1950.

Foley & Foley, Wabasha, Minn., for petitioner.

Paul M. Johnson, Principal Attorney, Railroad Retirement Board, Chicago, Ill. (Myles F. Gibbons, General Counsel, David B. Schreiber, Associate General Counsel, and William A. Eggert, Attorney, Railroad Retirement Board, Chicago, Ill. on the brief), for respondent.

Before JOHNSEN, RIDDICK and STONE, Circuit Judges.

JOHNSEN, Circuit Judge.

Nora Wheeler, the widow, by Minnesota law, of a pensioned railroad engineer, seeks to have reviewed, under section 11 of the Railroad Retirement Act, as amended, 45 U.S.C.A. § 228k, a decision of the Railroad Retirement Board, denying her application for a widow's insurance annuity under section 5(a) of the Act, 45 U.S.C.A. § 228e (a). The application had also previously been denied by the Bureau of Retirement Claims and by the Appeals Council, the initial and intermediate adjudicating units of the Board under the Act.

The record, on which the Board's decision rests, establishes that Mrs. Wheeler and the deceased were married in June, 1914, but that she left the family home in Wabasha, Minnesota, in January, 1915, and continued thereafter to live apart from the deceased up to the time of his death, in 1945. Her application for an annuity stated that the separation was occasioned by the deceased's excessive drinking habits and because he had refused to dismiss from the household a sister of his first wife, who had been his housekeeper in the interval before his remarriage. There was evidence also that the deceased had an obstinate and unsocial disposition, such that it was difficult for anyone to get along with him, and that this trait endured until his death.

The deceased continued for many years to make his home in the house in which he had been living at the time the parties married. In 1937, because of poor health, he moved to a hotel, where he had a room until 1940. Testimony is contained in the record that the hotel at that time refused to keep him longer because of his "temperament;" that it would have been a "favor" for anyone to have taken him in; and that arrangement finally was made for him to live at the local hospital, where he roomed and boarded and received such care as he needed, until his death five years later.

Under subsection (a) of section 5 of the Act, as amended, 45 U.S.C.A. § 228e(a), the widow of a "completely insured employee" (which the deceased admittedly was), who has reached the age of 65, is entitled to an annuity until her death or remarriage, but the term "widow," for purposes of this right, is by subsection (*l*) (1) of section 5, 45 U.S.C.A. § 228e (*l*) (1), made subject to the qualifications (which were here satisfied) of section 209(j) of the Social Security Act, 42 U.S.C.A. § 409(j), "*and in addition* [1]—

"(i) a 'widow' shall have been living with her husband employee at the time of his death;

\*    \*    \*    \*    \*    \*

"(iii) \* \* \* A 'widow' \* \* \* shall be deemed to have been so living with a husband \* \* \* if the conditions set forth in section 209(n) \* \* \* of the Social Security Act [42 U.S.C.A. § 409(n)] are fulfilled. \* \* \*"

Section 209(n) of the Social Security Act, 42 U.S.C.A. § 409(n), just referred to, provides that "\* \* \* a widow shall be deemed to have been living with her husband at the time of his death if they were both members of the same household on the date of his death, or she was receiving regular contributions from him toward her support on such date, or he had been ordered by any court to contribute to her support."

The clear effect of all this is that a widow is not entitled to an annuity under the Railroad Retirement Act, if she was not living with her husband employee at the time of this death—the term "living with" being legislatively defined as meaning for this purpose that (1) they were both members of the same household, or (2) she was receiving regular contributions from him

---

1. The emphasis has been supplied.

toward her support, or (3) he had been ordered by a court to contribute to her support.

It is not contended here that either condition (2) or condition (3) was applicable to Mrs. Wheeler's situation. The controlling question therefore is whether on the evidence in the record the Board was warranted in finding that she and the deceased were not members of the same household at the time of his death so as to establish eligibility on the basis of condition (1).

Admittedly, the Wheelers had become estranged 30 years prior to his death and had not thereafter had a home together. It was the widow's contention, however, that they had become reconciled some time prior to the husband's death and that only the circumstance of his condition had prevented them from reestablishing a common abode. In proof of this fact, she offered evidence of the number and frequency of the visits which she had made to the hotel, during his residence there, and to the hospital, as well as of the things which she had done for him during these years, such as attending to his shopping requirements, bringing fruit and other delicacies to him, etc. Friends and acquaintances also gave evidence of the cordial attitude which they appeared to exhibit toward each other throughout this period.

The Board duly considered all of these elements, as its "Statement" shows, in its effort to appraise the situation. It did not, however, feel persuaded by them, as against other elements in the situation, that any such reconciliation had occurred as would normally have resulted in the re-establishing of a common household. Thus, the Board made reference to the circumstances that the separation which had extended through more than two decades before the alleged reconciliation, had not been one of a temporary nature, such as to suggest that the parties intended to resume living together as soon as the conditions which had compelled the separation ceased to exist; that, notwithstanding that it would have been possible, as the evidence showed, for them to have lived together while the deceased resided at the hotel (at which time their changed relationship was supposed to have commenced), they both had continued to retain their separate abodes; and that the evidence as to the deceased's unchanged temperament and disposition tended to impress that perhaps the cordial relationship between them at the hotel and the hospital was "possible only because of the separation." There also was indication in the record that, although the widow was notified immediately of her husband's death, she did not put in an appearance until after his burial had been arranged for by a daughter of his first marriage.

On these varying elements of interpretation, it is not possible for us to hold that the Board was required to make the inference that "the parties would have lived together or would be members of the same household but for (the husband's) confinement to a hospital." As was pointed out by the Board, a separation of 22 years, such as had existed at the time the deceased moved to the hotel, would not carry any natural implication of an intention to reunite. Nor would the deceased's unchanged temperament and disposition seem to be an inducement to such a step. But if such a reconciliation had actually occurred as might constructively create a common household, and if such a constructive household could be sufficient in the situation for the purposes of the Act,[2] it still would be

---

2. In this connection, the Board's interpretative regulation, defining the term "members of the same household," 20 C. F.R. 1949 ed. § 237.304, would have to be noted:

"(a) * * * A husband and wife were members of the same household if they were living together, and customarily lived together, in the same place of abode.

"A husband and wife who customarily lived together in the same place of abode but who were not actually doing so at such time [the employee's death], may nevertheless be members of the same household if they were apart only temporarily and intended to resume living together in the same place of abode."

A regulation in identical terms has also been promulgated by the Social Security Administration of the Federal Se-

necessary for the widow to establish that the reconciliation had in fact been of that nature, extent and intention. And the inabsolute factors of interpretability which the situation presented would require that the Board make an appraisal of whether the fact was as the widow contended.

Congress has committed to the Board the task of resolving all facts in relation to the right to an annuity under the Railroad Retirement Act, and it has made the Board's determination of any such fact final, if there is substantial evidence to support it, either by direct proof or on probative circumstance from which a rational inference has been drawn. 45 U.S.C.A. § 355(f) expressly provides that, in any review of a decision of the Board by a Court of Appeals, "The findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive." And this provision is made controlling in a proceeding such as the present one by 45 U.S.C.A. § 228k.

█ The only question here therefore is whether the evidence legally permits of the factual view which the Board has taken (and, for the reasons given above, it does)— not whether that view is less weighty, appealing or humane than the one for which the widow contends. Any overturning by us of the finding made by the Board, that the reconciliation between the parties was not of the character which was intended or would have caused them to establish a common household, would in the situation amount simply to an independent revaluation of the evidence and a substitution of our judgment on the circumstances for that of the Board—which we would have no right to do. Cf. Ellers v. Railroad Retirement Board, 2 Cir., 132 F.2d 636; South v. Railroad Retirement Board, 5 Cir., 131 F.2d 748; Gardner v. Railroad Retirement Board, 5 Cir., 148 F.2d 935.

Affirmed.

curity Agency (formerly the Social Security Board) for purposes of the Social Security Act. See 20 C.F.R. 1949 ed. § 403.834(a).

It is unnecessary to discuss this regulation here, since the Board found that even the fact upon which the widow predicated her theory of right did not have existence.