### LONG v. RAILROAD RETIREMENT BOARD OF UNITED STATES OF AMERICA.

#### No. 14322.

United States Court of Appeals
Eighth Circuit.

March 27, 1952.

Nathan L. Schoenfeld, Hot Springs, Ark. (McMath, Whittington, Leatherman & Schoenfeld, Hot. Springs. Ark., on the brief), for petitioner.

Paul M. Johnson, Chicago, Ill. (Myles F. Gibbons, General Counsel, David B. Schreiber, Associate General Counsel, and Willis R. Barber, Attorney, Railroad Retirement Board, all of Chicago, Ill., on the brief), for respondent.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The Railroad Retirement Board denied the application of petitioner for an annuity under the Railroad Retirement Act, as amended, 50 Stat. 307, 60 Stat. 722, 45 U.S. C.A. § 228a et seq., and he has sought review.

The annuity application was made in 1950, when petitioner was 70 years of age. He was not at that time engaged in doing railroad work, nor had he been so engaged at any time since 1923. Prior to March 19, 1923, he had for a number of years been working for the Missouri Pacific Railroad Co., but on that date he was sent a letter by his Superintendent, stating: "For being implicated in loss of property entrusted to the Missouri Pacific Railroad to transport, you are dismissed from service."

A grand jury had shortly before returned an indictment against petitioner, charging him with a theft of goods from interstate shipment. Upon a trial thereafter, he was acquitted by the jury. The Brotherhood of Railroad Trainmen thereupon sought to induce the Railroad to return petitioner to service, but it refused to do so, on the ground, as its letter to the Brotherhood declared, that the action which it had taken against petitioner in the situation was not controlled by the outcome of his criminal trial.

It was petitioner's contention before the Board, as it is here, that his regular railroad occupation, with the Missouri Pacific and with other carriers earlier, had been that of brakeman, conductor and yardmaster; that he had continuously worked in this occupation on these several railroads

from 1900 until 1914, when he had lost three fingers of his left hand in an accident on the Missouri Pacific, for which that Railroad made a cash settlement with him and promised him a return of his job; that, after he was able to go back to work, he so notified the Railroad and was directed to report at his previous job of yardmaster; that on the night before he was supposed thus to report, however, he accidentally shot off his entire left hand while cleaning a shot gun; that this condition made it impossible for him thereafter to carry on his "regular occupation of brakeman, conductor and yardmaster," and he accordingly turned in his "ticket punch" and "never again worked in his regular occupation;" that he did no railroad work from that time on until 1917 when, during the man-power shortage of World War I, he was offered work by the Missouri Pacific as a switchtender, which he accepted and in which he continued to engage until his purported dismissal from service on March 19, 1923, as above referred to; that his disability to engage in his regular occupation of brakeman, conductor and yardmaster after 1917 had left him in a constructive "employment relation" to the Missouri Pacific from that time on, for purposes of the Railroad Retirement Act and within the provisions of section 1(d) (iii) thereof, as amended, 60 Stat. 725, 45 U.S.C.A. § 228a(d) (iii), and entitled him to an annuity under the Act on that basis; that his purported dismissal from service in 1923 had been wrongful and improper, but that in any event the constructive "employment relation" existing under the statute, because of his disability to engage in his previous regular occupation, was not subject to being affected by the circumstance that he had engaged in the work of switchtender from 1917 to 1923, or by any incident which had occurred on that temporary job, including his purported dismissal from the carrier's service while he was so engaged.

There is nothing in the language of section 1(d) (iii) of the Act to support petitioner's contention that, despite his dismissal by the carrier from its service in 1923, while he was working as a switchtender, his previously sustained disability to perform the work of a brakeman, conductor or yardmaster, if he was so disabled, left him with a continuing constructive "employment relation" in that capacity and entitled him to an annuity on that basis. The material portion of the section referred to, upon which petitioner rests his reliance, 45 U.S.C.A. § 228a(d) (iii), is as follows: "An individual shall be deemed to have been in the employment relation to an employer on the enactment date [August 29, 1935] if * * * (iii) before the enactment date he did not retire and was not retired or discharged from the service of the last employer by whom he was employed * * * but (A) solely by reason of his physical or mental disability he ceased before the enactment date to be in the service of such employer and thereafter remained continuously disabled until he attained age sixty-five or until August 1945 or (B) solely for such last stated reason an employer by whom he was employed before the enactment date or an employer who is its successor did not on or after the enactment date and before August 1945 call him to return to service * * *."

The Board made findings to the effect that the dismissal of petitioner from the carrier's service in 1923, following his alleged implication in a theft from interstate shipment, was intended by the carrier as a severance or a discharge of him from all existing relationship between them and from any further service right on the Railroad; that it was at all times thereafter treated by the carrier as having that effect; and that this intended significance was known to petitioner at the time. On the basis of these facts, the Board held that petitioner had had no right of any nature at any time after March 1923 to return to service on the Railroad in any capacity and so did not occupy a constructive "employment relation" to the carrier on August 29, 1935, the enactment date of the Act, under the provisions of section 1(d) (iii), as petitioner contended.

The Board's denial of petitioner's application for an annuity is required to be affirmed. Its finding as to petitioner's dismissal by the carrier having constituted an intended and adhered-to discharge of him

from all existing relationship between them and from any further service right on the Railroad clearly is supported by substantial evidence on the whole record and so is binding upon us. See Wheeler v. Railroad Retirement Board, 8 Cir., 184 F.2d 173, 176; Robinson v. Railroad Retirement Board, 8 Cir., 184 F.2d 703, 705. Indeed, on all the evidence, it hardly would have been possible for the Board to have made any other finding. In this situation, with no subsequent reinstatement being involved, the language of section 1(d) (iii) of the Act, on its very face, precluded any holding by the Board that a constructive employment relation under the statute had continued to exist on the basis of the conditions that petitioner had ceased to be in the service of the carrier solely because of his physical disability or that he had not been called to return to service after the enactment date of the Act solely because of such disability. The affirmative discharge found to have been made and known to petitioner to be so intended left these conditions without any possibility of application or operation.

Nor, since such a discharge had occurred in fact and had remained in effect, was it in any way open, under section 1(d) (iii), to the Board to inquire why the discharge had been made or whether it had a wrongful or proper basis. Cf. South v. Railroad Retirement Board, 5 Cir., 131 F.2d 748, certiorari denied 317 U.S. 701, 63 S.Ct. 525, 87 L.Ed. 561; Skinner v. Railroad Retirement Board, 7 Cir., 182 F.2d 622. Petitioner's service prior to the enactment date, August 29, 1935, of the Railroad Retirement Act would legally have no relationship to the annuity right for which the Act provided, except such as the Act itself gave it. And, under the language of the Act, an affirmative discharge, made before the enactment date of the Act and not revoked, has been accorded its normal legal effect of having severed completely the tie of all employment relationship between the carrier and the employee and so of leaving such previous service without any basis to claim employment relation, either actual or constructive, as a foundation for an annuity under the Act.

The contention has been made that the Board failed to make a sufficient investigation of the facts of the situation and that its findings and decision are accordingly arbitrary. The argument is directed primarily to the point that the Board did not go into the questions of whether petitioner had had the "regular occupation of brakeman, conductor and yardmaster," whether he was in fact disabled to perform it, and whether his purported discharge had been warranted. But these questions, as we have indicated were not relevant under the Act. When petitioner was unqualifiedly dismissed from service, his discharge, as we have said, was legally operative in relation to all positions or occupations on the Railroad, as much those which he had previously occupied as any in which he might thereafter otherwise perhaps have come to engage. And this was equally true whether the discharge was or was not morally justified on the factual situation. The question under the Act was not whether petitioner was discharged for proper cause but whether he was discharged. Nor does there appear to be any other line of exploration or inquiry in which it reasonably can be held that the Board should have engaged, as being capable possibly of having produced a different result to petitioner.

Affirmed.