George C. MOORE, Sr.

v.

Guy A. THOMPSON, Trustee, The St. Louis, Brownsville & Mexico Railway Co.

Civ. A. No. 973.

United States District Court
S. D. Texas.
April 29, 1953.

See also 223 F.2d 91.

J. Marvin Ericson, Corpus Christi, Tex., for plaintiff.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, Tex., for defendants.

ALLRED, District Judge.

Plaintiff, a resident citizen of Texas, brings this action against defendant, a resident citizen of Missouri. The complaint is in five counts, which really amount to alternative pleadings. Plaintiff alleges:

That he was an employee of defendant under a contract of employment of which the laws of the United States are part, particularly Title 45, Chapters 8 and 9; that on or about October 1, 1924, the railroad entered into a contract with its conductors, represented by the Order of Railway Conductors of America, governing terms and conditions of conductors then in service or who might enter defendant's service, a copy being attached as Exhibit A; that plaintiff entered defendant's employ under such contract about November 1, 1929.

About August, 1949, on the advice of his private physician, with defendant's acquiescence, and without resigning or being discharged, plaintiff laid off to fol-

low a regimen recommended by his physician; that about February 15, 1951, having recovered and being in good health for a man of his age, plaintiff presented himself to defendant for resumption of his duties; that defendant, contrary to the contract, refused and still refuses to permit plaintiff to resume and perform his duties; that defendant wrongfully demanded that plaintiff submit to a medical examination by defendant's physician, which requirement was in violation of the contract in which it was stipulated that proper performance of duties would be considered a satisfactory test of physical ability; that this constituted a wrongful discharge of plaintiff to his damage.

In the alternative, plaintiff submitted to an examination by defendant's chief surgeon about February 20, 1951; that the chief surgeon made a written report to defendant, dated March 2, 1951, wrongfully reporting that plaintiff was not physically capable of performing his work, notwithstanding that plaintiff was in good physical condition and capable of performing his duties; that defendant, relying solely on the chief surgeon's report, refused to permit plaintiff to resume performance of his duties which also constituted a wrongful discharge;

Alternatively, after the report of defendant's surgeon plaintiff had himself examined by several competent physicians and surgeons who reported that he was in good physical condition considering his age; that plaintiff furnished these reports to the defendant and requested a hearing which was refused; that this amounted to a wrongful discharge;

Alternatively, about March 6, 1951, when plaintiff received a copy of the chief surgeon's report, he had himself examined by other doctors, including specialists, and again requested a hearing; that this request was granted about May 12, 1951, when plaintiff furnished the reports of his physicians to the defendant and requested that he be given an opportunity to demonstrate his ability to perform his duties; that about August 30, 1951, the defendant refused such request, which amounted to a wrongful discharge;

Alternatively, that after August 30, 1951, plaintiff had other medical examinations made; that about May 1, 1952, he presented all data and information with reference to such examinations to defendant and requested that he be permitted to resume performance of his duties; that about May 29, 1952, defendant attempted to impose conditions upon plaintiff in violation of the contract, among others, that plaintiff agree to waive compensation for the time he had lost by being refused employment theretofore; that this amounted to wrongful discharge;

That plaintiff's physical condition on February 15, 1951, when he originally requested re-employment, was substantially the same as on all other subsequent occasions; that at that time plaintiff had a life expectancy of fourteen (14) years, at least eight of which he would have continued in active duty and the remainder in retirement with benefits; that he had accumulated 22 years seniority and would have acquired 8 more, or a total of 30 years; that his average monthly pay was and would have continued to be $700 a month;

Plaintiff sues for $92,600.00 actual damages and $15,000.00 exemplary damages.

Defendant moved for production of documents in connection with plaintiff's application to the U. S. Railroad Retirement Board for disability pension or annuity under the Railroad Retirement Act, setting up that in connection with such application plaintiff made certain statements and representations as to his physical condition and bearing on whether or not plaintiff was defendant's employee at the time of his alleged wrongful discharge.

Plaintiff then filed a motion for production of documents, including various correspondence, allegedly passing between defendant and the Railroad Retirement Board and particularly a copy of a report made by defendant's chief surgeon to the

Railroad Retirement Board. Plaintiff opposed defendant's motion for production of documents unless it be conditioned upon defendant's production of the documents plaintiff desires, particularly the report of the chief surgeon to the Board.

Defendant replies that it is willing to produce all of the documents requested by plaintiff excepting the report by the chief surgeon which, defendant claims, it does not have and cannot secure; and excepting certain other documents which it has been unable to find after diligent search; and also excepting a demand for production of the record of plaintiff's work time, as requested in Item 15 (since defendant had furnished plaintiff with a full statement of wages paid him);

In connection with plaintiff's demand for production of the chief surgeon's report to the Railroad Retirement Board, plaintiff has attached copies of various letters passing between him and such board with reference to his annuity claim, his request for a copy of the chief surgeon's report and his request that he be given physical examinations by the board which would disclose that he was physically able to return to his duties. Several of these letters show that the board refused plaintiff's request for a copy of the chief surgeon's report on the ground that "it is for use exclusively in the administration of the Railroad Retirement Board."

Thereafter defendant moved to dismiss because:

Prior to September 29, 1949, plaintiff applied to the Railroad Retirement Board for a disability annuity which was granted, and plaintiff is still drawing monthly payments of such annuity; that it has never been set aside and cannot be collaterally attacked in this action; that plaintiff is estopped, by continued acceptance of the annuity, to contend that he is not disabled and to ask for damages in his action.

While defendant's motion is denominated a motion to dismiss, it is, in reality, a motion for summary judgment, based upon exhibits and plaintiff's deposition.

From the incomplete record before me it appears that:

(1) Prior to May 9, 1947, plaintiff applied to the Railroad Retirement Board for a disability annuity which was denied on or about March 22, 1948, on the ground that he was less than 60 years of age, had less than 20 years service and was not totally and permanently disabled for hire, and did not qualify "under section 2(a) 5 of the Railroad Retirement Act of 1937;"

(2) Thereafter plaintiff applied to defendant for reinstatement and compensation for time lost; his union filed a grievance complaint which resulted in his reinstatement; he resumed his services about June 7, 1948, and continued through August 18, 1949;

(3) Sometime prior to September 29, 1949, plaintiff again applied for (or renewed his previous application to the Railroad Retirement Board) for a disability annuity; this was granted by the Board on December 16, 1949 (but effective August 19, 1949); plaintiff is still receiving this annuity, in monthly payments; it was awarded "principally upon the basis of arthritis" and a finding that he was disabled for work in his employment;

(4) On August 8, 1951, plaintiff wrote the Board that he was anxious to resume his duties, and believed he was physically able to do so; that on March 2, 1951, defendant's chief surgeon had recommended that plaintiff not resume his duties; that thereafter he had been examined by doctors in Houston, San Antonio and Kingsville whose findings differed from the chief surgeon's; plaintiff, therefore, requested the Board to have him examined to see if he still was entitled to receive his annuity;

(5) On December 26, 1951, the Board advised that, after considering general and specialized examinations, including the one of March 2, 1951, by defendant's chief surgeon, they still considered him "permanently disabled for work" in his

regular occupation; that the Board had no jurisdiction over employment practices of the railroads and the question of re-employment was purely a matter between plaintiff and his former employer;

(6) Plaintiff wrote Senator Lyndon Johnson who, in turn, took the matter up with the Board; Senator Johnson was advised by the Board on July 3, 1952, that their regulations provided that a recipient of disability annuity report to them if he had recovered; and that, in view of plaintiff's letter to the Senator, the Board was arranging to have specialized examinations made of him to determine if he had recovered and was "no longer entitled to the annuity benefits which he is now receiving;" at the same time the Board requested plaintiff to report to the Veteran's Administration Regional Office at San Antonio for the examination;

(7) On July 12, 1951, plaintiff wrote the Board that apparently the request for re-examination had been made "by some one other than myself;" that the Board had had plaintiff examined at his own request, in October, 1951, by Dr. A. C. Jones of Kingsville and had advised that his standing would remain unchanged; that he did not object to the examination but would like to know who made the request and for what purposes;

(8) The examination was made at San Antonio and, on August 19, 1952, the Board advised plaintiff as follows:

"Our records show that you were awarded an annuity principally upon the basis of arthritis and that the annuity has been continued uninterrupted since the award was approved in your favor. The report received from the Veterans Administration Hospital which covers a series of specialized examinations shows substantially the same disability which was present at the time your claim for a disability annuity was approved. The x-ray showed a curvature of the cervical spine, a distinct lipping on the lower cervical vertebrae, a slight lipping on the lower dorsal vertebrae and calcification in the lower dorsal interspaces. Upon the basis of these x-ray studies, a diagnosis of arthritis of the spine was confirmed and continued in effect. Under this decision no change is indicated in the disability status of your claim in so far as your right to receive a disability annuity is concerned. As previously stated, the Board has no jurisdiction over the question of whether the employer returns you to work in your regular occupation."

(9) Plaintiff tried several times to secure a copy of the report to the Board of defendant's chief surgeon as to his findings, but the Board refused to furnish it on the ground that "any report of physical examination, regardless from whom it may have been received, is for use exclusively in the administration of the Railroad Retirement Act."

Plaintiff was granted his annuity in 1949 under the provision of 45 U.S.C.A. § 228b(a) 4(i), upon a finding that his permanent physical or mental condition was such as to be disabling for work in his regular occupation, having completed 20 years of service. Subsection (a) 4 further provides, in part:

"The Board, with the cooperation of employers and employees, shall secure the establishment of standards determining the physical and mental conditions which permanently disqualified employees for work in the several occupations in the railroad industry, and the Board, employers, and employees shall cooperate in the promotion of the greatest practicable degree of uniformity in the standards applied by the several employers. An individual's condition shall be deemed to be disabling for work in his regular occupation if he will have been disqualified by his employer because of disability for service in his regular occupation in accordance with the applicable standards so established * * *."

Subsection (a) 5 provides in part:

"Such satisfactory proof shall be made from time to time as prescribed by the Board, of the disability provided for in paragraph 4 or 5 of this subsection and of the continuance of such disability (according to the standards applied in the

establishment of such disability) until the employee attains the age of sixty-five. If the individual fails to comply with the requirements prescribed by the Board as to proof of the continuance of the disability until he attains the age of sixty-five years, his right to an annuity by reason of such disability shall, except for good cause shown to the Board, cease, but without prejudice to his rights to any subsequent annuity to which he may be entitled. If before attaining the age of sixty-five an employee in receipt of an annuity under paragraph 4 or 5 of this subsection is found by the Board to be no longer disabled as provided in said paragraphs his annuity shall cease upon the last day of the month in which he ceases to be so disabled. An employee, in receipt of such annuity, who earns more than $75 in service for hire, or in self-employment, in each of any six consecutive calendar months, shall be deemed to cease to be so disabled in the last of such six months; and such employee shall report to the Board immediately all such service for hire, or such self-employment. If after cessation of his disability annuity the employee will have acquired additional years of service, such additional years of service may be credited to him with the same effect as if no annuity had previously been awarded to him."

It is defendant's contention that the Board has jurisdiction, not only to determine the existence of a claimed disability originally, but, once found, whether the disability continues from time to time if it is called in question; that the Board's decisions are not subject to review by other administrative agencies or accounting officers, under 45 U.S.C.A. § 228j(b) 1; and can only be reviewed by the Courts, under section 228k of Title 45, by a proceeding brought for that purpose, upon a showing that it is clearly and manifestly wrong. There is no doubt that such is the rule in cases where the Board denies an application for an annuity; the order will stand if supported by substantial evidence and not in violation of law. Gardner v. Railroad Retirement Board, 5 Cir., 148 F.2d 935; Watts v. Railroad Retirement Board, 5 Cir., 150 F.2d 113; Welborn v. Railroad Retirement Board, 5 Cir., 151 F.2d 448; Squires v. Railroad Retirement Board, 5 Cir., 161 F.2d 182; Wheeler v. Railroad Retirement Board, 8 Cir., 184 F.2d 173; Robinson v. Railroad Retirement Board, 8 Cir., 184 F.2d 703.

Unquestionably, the same rule would apply in an action by an employee where the Board discontinued an annuity upon a finding that the disability no longer existed. But does the statute require such a direct proceeding for judicial review where the Board has found that the disability still exists? As shown by the emphasized portions of the statute quoted above, the Board has power to require satisfactory proof from time to time of the continuance of the disability; and, if the beneficiary fails to comply with such requirement, or if the Board finds that he is no longer disabled, his annuity ceases. Section 228i authorizes recovery and adjustment of annuities erroneously paid; and protects from liability certifying or disbursing officers acting in good faith.

This is an anomalous, indeed a peculiar case. It would be supposed that ordinarily the Board would accept an annuity recipient's claim that he had recovered and stop paying him an award he says he does not want. All the reported cases are complaints that the Board has wrongfully denied an annuity to a claimant, not that it had continued one he no longer is entitled to. Utah Copper Co. v. Railroad Retirement Board, D.C., 41 F.Supp. 763, affirmed, 10 Cir., 129 F.2d 358, Railroad Retirement Board v. Duquesne Co., 326 U.S. 446, 66 S.Ct. 238, 90 L.Ed. 192, and Dispatch Shops v. Railroad Retirement Board, 2 Cir., 154 F.2d 417, were actions by employers to set aside Board holdings that they were employers under the act. An additional oddity is the fact that here the employee continues to accept his annuity although he says he is not entitled to, and does not want it.

As pointed out, the statute grants to the Board jurisdiction and broad power to determine disability originally and,

664

from time to time, whether it still exists. 45 U.S.C.A. § 228j(b) 1 provides that the Board "shall have and exercise all the duties and powers necessary to administer sections 228a–228c–1, 228e–228h, 228i–228p, 228r, and 228s". Section 228k provides that decisions of the Board determining the rights and liabilities of any person (under this, I suppose, defendant could have petitioned for a judicial review of the continuance of this annuity, since "person" is defined in section 228a(n) to include a corporation; and in old section 228k, a part of the Act of 1937, the right to Court relief was accorded to "an employee or other person aggrieved.") under sections 228a to 228c –1 "shall be subject to judicial review in the same manner," etc., as under chapter 11 of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 355(f) by filing a petition for review against the Board, in the district court where the claimant resides, within one year. And, as held in the cases, the Board's decision can only be set aside where not supported by substantial evidence and in violation of law.

Notwithstanding the broad language of the statute, I doubt that Congress contemplated that there ever would be an appeal by an annuity beneficiary for judicial review of an order awarding him a continuance of his annuity on the ground that his disability had ceased. Among other reasons for this view, in addition to the anomaly of the situation itself, are the following: (1) the provisions for recovery or adjustment of annuities erroneously paid; (2) the fact that section 228k provides that proceedings for review of a decision with respect to an annuity must be commenced within one year after the decision is entered upon the Board's records and communicated to the claimant; and (3) the provisions of section 228b, reading as follows:

"(b) An annuity shall be paid only if the applicant shall have relinquished such rights as he may have to return to the service of an employer and of the person by whom he was last employed; *but this requirement shall not apply to the individuals mentioned in subdivisions 4 and 5 of subsection (a) of this section prior to attaining age sixty-five.*" (Emphasis supplied.)

Plaintiff, coming within the foregoing emphasized exception, says that the effect of the Board's refusal to find that he has recovered and to discontinue his annuity is to compel him to relinquish his right to return to his employment. The Board disclaims jurisdiction of the question of re-employment, saying in its letters that this is a matter between plaintiff and defendant. Nevertheless, the fact remains that plaintiff invoked the Board's jurisdiction originally, reinvoked it on the question of his recovery and continues to accept the benefits of an award, based upon a finding that he is, and has been since 1946, disabled for work in the very employment he says he is now able to resume. The Board made its findings over plaintiff's protests, just as it made findings that certain companies were employers in the cases last above cited. Plaintiff's whole argument here is that the Board acted arbitrarily and in violation of law; that its decision was the result of collusion with or procurement of, defendant.

■ Plaintiff had the right to make those contentions and have them decided in a direct proceeding or review brought under section 355(f). But the findings, upon which the annuity is based, is not res judicata which does not apply to administrative decisions. 50 C.J.S., Judgments, § 606, p. 29. So the situation is not unlike one where a claim for total permanent incapacity is made under the Workmen's Compensation laws and it is shown that the claimant had been found to be so incapacitated in a previous action. It is a question of fact whether he had recovered from the previous condition.

■■ Defendant's plea of estoppel is based upon the foregoing and the fact that plaintiff has continued to collect his annuities. Ordinarily, of course, in order to create an estoppel, the party invoking the doctrine must have acted or been misled to his prejudice; but estoppel frequently is based upon acceptance

or retention of benefits, a branch of the rule against inconsistent positions, referable to the principle of election rather than to that of equitable estoppel. 19 Am.Jr. 682. At this time the record is not sufficiently developed for me to say that plaintiff is so estopped.

The appellate courts repeatedly have cautioned trial courts to carry motions for summary judgment along with the case until all the evidence is in, especially in close cases, such as this one. I shall do that here.

Defendant's motion for summary judgment, therefore, is overruled and will be carried along with the case.

As indicated upon pre-trial, both motions for production of documents are granted as to all documents the parties are able to secure; excepting that defendant will not be required to produce the record of plaintiff's work time, as requested in item 15.

See also 223 F.2d 91.