644

## DESPATCH SHOPS, Inc., et al. v. RAILROAD RETIREMENT BOARD et al.

### No. 9081.

United States Court of Appeals
District of Columbia.

Argued Dec. 12, 1945.

Decided Feb. 13, 1946.

Mr. Paul Folger, of New York City, pro hac vice, by special leave of Court, with whom Mr. A. Rea Williams, of Washington, D. C., was on the brief, for appellants.

Mr. Myles F. Gibbons, General Counsel, Railroad Retirement Board, of Chicago, Ill., with whom Mr. David B. Schreiber, Assistant General Counsel, of Chicago, Ill., was on the brief, for appellee Railroad Retirement Board.

Mr. Willard H. McEwen, of Toledo, Ohio, with whom Messrs. Frank L. Mulholland, of Toledo, Ohio, and Edward C. Kriz, of Washington, D. C., were on the brief, for appellees Railway Employees' Department, A. F. of L., and System Federation No. 103 of the Railway Employees' Department, A. F. of L.

Before GRONER, Chief Justice, and CLARK and PRETTYMAN, Associate Justices.

CLARK, Associate Justice.

This is a controversy under the Railroad Unemployment Insurance Act.[1] The case arose by a petition for review of a final determination of the Railroad Retirement Board holding that appellant, Despatch Shops, Inc. (hereafter referred to as "Despatch"), is an "employer" within the meaning of Sec. 1(a) of that Act. The petition for review was filed in the District Court on May 27, 1944. The Railroad Retirement Board (hereafter referred to as the "Board"), filed an answer, and thereafter, by consent, the Railroad Employees' Department of the American Federation of Labor and System Federation No. 103 of the Railway Employees' Department of the American Federation of Labor was allowed to intervene and answer. Subsequently, the District Court dismissed the petition for review and from this order of dismissal the present appeal is taken.

The sole question before us is whether the Board's ruling that Despatch is an "em-

---

[1] Act of June 25, 1938, c. 680, Sec. 1(a), 52 Stat. 1094, as amended August 13, 1940, c. 664, Sec. 1(a), 54 Stat. 785 and October 10, 1940, c. 842, Sec. 20, 54 Stat. 1094, 45 U.S.C.A. §§ 351(a), 355(c, f).

ployer" within the meaning of Sec. 1(a) of the Act, should be sustained or reversed. The pertinent definition of the term "employer," as taken from the Act is as follows:[2]

"The term 'employer' means any carrier (as defined in subsection (b) of this section), and any company which is directly or indirectly owned or controlled by one or more such carriers or under common control therewith, and which operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad * * *." (Subsection (b) defines the term "carrier" as "an express company, sleeping-car company, or carrier by railroad, subject to part I of the Interstate Commerce Act.")

The facts in the instant case are simple and substantially uncontested. Despatch was incorporated under the laws of the State of New York on November 23, 1939, and has at all times been owned and controlled through the one hundred percent stock ownership of the other appellant, the New York Central Railroad Company, (hereafter referred to as "Central"). All of Despatch's principal corporate officers and three of its seven directors were at the time of the proceedings now under review officers of Central.

Despatch has owned and operated railroad freight-car shops at East Rochester, New York, along Central's main line running from New York City to Buffalo, where it has regularly performed various kinds of freight car repairs, "heavy" and "medium," and car construction, reconstruction and conversion. The plant consists of some sixty acres of land on which are situated buildings occupying about fifteen acres and extensive switching and storage railroad trackage. It manufactures new freight cars, refrigerator cars, box cars, hopper cars, gondola cars, and flat cars, but not tank cars. Despatch also rebuilds and converts cars by repairing the trucks and underframes as may be necessary, and by tearing down and building anew the upper structure, this rebuilding being described as "heavy" repairs and the conversion having to do with changes in the type of car. It appears that while the Despatch plant is located alongside the Central main line, the cars upon which it works are always withdrawn from service, delivered to a siding and thereafter moved by Despatch locomotives.

By far the greater part of Despatch's business is with Central and its subsidiaries. Illustrative of this fact is the finding by the Board that as of July 31, 1939, over 98 per cent of Despatch's "accounts receivable" resulted from operations performed for Central and its subsidiaries. It does not appear that Despatch was a competitor with other car builders in the usual sense of the word. While it did small amounts of work for other roads, no effort was made to solicit business or extend its operations to serve other lines.

The only reasonable conclusion that can be drawn from the facts appearing in the record is that the primary function of Despatch has been to serve Central and its subsidiaries.

█ To bring Despatch within the Act, the organization must qualify first as a "company which is directly or indirectly owned or controlled by" a carrier, and, second, as one "which operates any equipment or facility or performs any service * * * in connection with the transportation of passengers or property by railroad." All of Despatch's stock being owned by Central, and the top management being interlocking, it clearly meets the first requirement. The fact of a separate corporate entity does nothing to remove Despatch from the language "directly or indirectly owned or controlled."

There remains the examination of Despatch's activities as they relate to "the transportation of passengers or property by railroad." In the light of this court's decision in Railroad Retirement Board v. Duquesne Warehouse Co., 80 U.S.App.D. C. 119, 149 F.2d 507, recently affirmed by the Supreme Court,[3] we think that here our course is clear. The facts now before the court afford no occasion to discuss at length the correctness of the Board's determination that Despatch is an "employer" within the terms of the Act. What we said on that subject in the Duquesne case applies equally in the instant case. Indeed, we

---

[2] 52 Stat. 1094, 45 U.S.C.A. § 351.

[3] Duquesne Warehouse Co. v. Railroad Retirement Board, 66 S.Ct. 238.

think there are even more cogent reasons for upholding the Board's determination in the present litigation.

It is difficult to conceive of any supporting activity that is more inherent or vital to the sustained functioning of a railroad system than the repair and construction of its rolling stock. We see little merit in the distinction which appellant would have us make between "heavy" and "light" or "running" repairs. This distinction, as well as the fact that the company does perform new construction work of a type done by independent organizations, is set forth by appellant in support of the contention that Despatch should be regarded as occupying the status of a manufacturing concern distinct and separate from the transportation service of the owning carrier. Having found that appellant qualifies under the first standard of the law by reason of being wholly owned and controlled by Central, we attach little weight to the argument that because Despatch does only heavy repairs—light repairs being done by the carrier—it any the less performs services defined by the statute. This argument is akin to that advanced by the petitioner in the case of Virginian Ry. v. System Federation, *300 U.S. 515, 57 S.Ct. 592, 604, 81 L.Ed. 789*, which arose under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. The Supreme Court there said: "It is no answer, as petitioner suggests, that it could close its back shops and turn over the repair work to independent contractors. Whether the railroad should do its repair work in its own shops, or in those of another, is a question of railroad management. It is petitioner's determination to make its own repairs which has brought its relations with shop employees within the purview of the Railway Labor Act." Similarly, it does not favor appellant that independent organizations do perform work of the same character. Mr. Justice Douglas, speaking for the Supreme Court in its recent consideration of the Duquesne Warehouse cases, stated the test in this fashion: "We think it plain that the definitions in question include at the very least those activities which would be transportation services when performed by a railroad but which it chooses to have performed by its affiliate."[4]

If Despatch, in this situation, is not an "employer" under the terms of the Act, it can be readily seen that the railroads would be free to take from under the Act virtually all of their workers whose employment is in the "supporting" activities, through the simple expedient of setting up wholly owned corporate affiliates to perform these services. It is conceivable that everything from maintenance-of-way through engineering or bookkeeping might be done by so called "independent" corporations. The application of this Act and of the other Acts passed for similar purposes and embodying the same language could be so severely limited as to render them of little worth in achieving the purposes for which they were passed.

■ This is not, in our opinion, a case which requires a review of the standards to be employed in determining the weight to be given the statutory interpretation or finding of an administrative agency.[5] We are prepared to say that without the benefit of the Board's interpretation of the word "employer" we would have reached the same result. The intent of Congress as reflected in the language of the statute, coupled with the undisputed fact of railroad operations, dictates our decision. And we much prefer to rest it on that ground than on the ground of administrative determination.

Affirmed.

---

[4] Id., 66 S.Ct. 238, 242.

[5] See: Duquesne Warehouse Co. v. Railroad Retirement Board, 2 Cir., 148 F.2d 473.