DESPATCH SHOPS, Inc., et al. v. RAIL-ROAD RETIREMENT BOARD et al.

No. 149.

Circuit Court of Appeals, Second Circuit.

March 4, 1946.

Paul Folger, of New York City (Frederick L. Wheeler, Crosby J. Beakes, Leo Manville, and Samuel H. Hellenbrand, all of New York City, on the brief), for plaintiffs-appellants.

Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, of Chicago, Ill. (David B. Schreiber, Asst. Gen. Counsel, and Paul M. Johnson, Louis Turner, and Alfred H. Myers, Attys., Railroad Retirement Board, all of Chicago, Ill., on the brief), for defendant-appellee Railroad Retirement Board.

Willard H. McEwen, of Toledo, Ohio (Frank L. Mulholland, Clarence M. Mulholland, and Mulholland, Robie & McEwen, all of Toledo, Ohio, and Samuel J. Cohen, of New York City, on the brief), for intervening defendants-appellees.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, Circuit Judge.

In the course of its duties to settle claims for benefits under the Railroad Retirement Act of 1937, § 10, 45 U.S.C.A. § 228j, the Railroad Retirement Board found it necessary to determine whether or not Despatch Shops, Inc., was an employer within the meaning of the Act. The Board appointed an examiner who heard testimony from the parties and made his report concluding that Despatch was a covered employer. Thereafter, on considering the evidence, the exceptions to the examiner's report, and the arguments, the Board, one member dissenting, filed its decision with findings of fact, conclusions, and opinion holding that Despatch was a covered employer and that compensated service by its employees was creditable towards annuities under the Act. To review this decision Despatch and the New York Central Railroad Company brought this action to the District Court pursuant to the statutory provision for review, Railroad Retirement Act of 1937, § 11, 45 U.S.C.A. § 228k; and from the dismissal of their action, 60 F.Supp. 106, they now appeal.

Despatch is a wholly-owned subsidiary of the New York Central, and at the time involved all of its principal corporate officers and three of its seven directors were officers of Central. The issue arises under the definition of "employer," which includes not only any carrier, but any company owned by a carrier—conceded here—and which "performs any service * * * in connection with the transportation of passengers or property by railroad." § 1, 45 U.S.C.A. § 228a. Despatch, which repairs, reconverts, and manufactures freight cars, largely for Central, asserts that it is engaged in the manufacture of railroad equipment, an industrial process, not a transportation service.

Our task is made easier here, since, after our conference and decision to affirm the judgment below and while this opinion was in the course of preparation, the United States Court of Appeals for the District of Columbia has rendered an opinion on the same record which well states our view of the case. In the same decision which determined the issue before us, the Board also held Despatch to be an employer within the like definition of the Railroad Unemployment Insurance Act, § 1(a), 45 U.S.C.A. § 351(a); and this holding has now been sustained by the Court of Appeals, affirming the decision of the District Court for the District of Columbia. Despatch Shops v. Railroad Retirement Board, App. D.C., 153 F.2d 644. Obviously the results must be the same under the two Acts; and the Supreme Court has recently reconciled divergences between our courts in a decision persuasive on the present problem, holding a warehousing corporation an employer under the Acts. Railroad Retirement Board v. Duquesne Warehouse Co., 66 S. Ct. 238, affirming App.D.C., 149 F.2d 507, and reversing 2 Cir., 148 F.2d 473 (wherein Judge Frank had dissented). We agree with the Court of Appeals that "there are even more cogent reasons for upholding the Board's determination in the present litigation."

That court states the facts succinctly:

"Despatch has owned and operated railroad freight-car shops at East Rochester, New York, along Central's main line running from New York City to Buffalo, where it has regularly performed various kinds of freight car repairs, 'heavy' and 'medium,' and car construction, reconstruction and conversion. The plant consists of some sixty acres of land on which are situated buildings occupying about fifteen acres and extensive switching and storage railroad trackage. It manufactures new freight cars, refrigerator cars, box cars, hopper cars, gondola cars, and flat cars, but not tank cars. Despatch also rebuilds and converts cars by repairing the trucks and underframes as may be necessary, and by tearing down and building anew the upper structure, this rebuilding being described as 'heavy' repairs and the conversion having

to do with changes in the type of car. It appears that while the Despatch plant is located alongside the Central main line, the cars upon which it works are always withdrawn from service, delivered to a siding and thereafter moved by Despatch locomotives.

"By far the greater part of Despatch's business is with Central and its subsidiaries. Illustrative of this fact is the finding by the Board that as of July 31, 1939, over 98 per cent of Despatch's 'accounts receivable' resulted from operations performed for Central and its subsidiaries. It does not appear that Despatch was a competitor with other car builders in the usual sense of the word. While it did small amounts of work for other roads, no effort was made to solicit business or extend its operations to serve other lines."

And it therefore concludes: "The only reasonable conclusion that can be drawn from the facts appearing in the record is that the primary function of Despatch has been to serve Central and its subsidiaries." The court then continues: "It is difficult to conceive of any supporting activity that is more inherent or vital to the sustained functioning of a railroad system than the repair and construction of its rolling stock. We see little merit in the distinction which appellant would have us make between 'heavy' and 'light' or 'running' repairs. This distinction, as well as the fact that the company does perform new construction work of a type done by independent organizations, is set forth by appellant in support of the contention that Despatch should be regarded as occupying the status of a manufacturing concern distinct and separate from the transportation service of the owning carrier. Having found that appellant qualifies under the first standard of the law by reason of being wholly owned and controlled by Central, we attach little weight to the argument that because Despatch does only heavy repairs—light repairs being done by the carrier—it any the less performs services defined by the statute."

We may add that the history of this legislation demonstrates the need of inclusion of just such workers as are here involved if disastrous interference with transportation service, such as the strike of the shop employees in 1922, is to be avoided. These and other factors show that the precedents under acts administered by the Interstate Commerce Commission for quite different objectives—rate making and avoidance of discrimination in railroad charges, rather than provision for annuities and other benefits to transportation workers—cannot be employed, as plaintiffs would urge, for the definitive clarification of the coverage of these Acts. We therefore agree with the Court of Appeals when it says: "If Despatch, in this situation, is not an 'employer' under the terms of the Act, it can be readily seen that the railroads would be free to take from under the Act virtually all of their workers whose employment is in the 'supporting' activities, through the simple expedient of setting up wholly owned corporate affiliates to perform these services. It is conceivable that everything from maintenance-of-way through engineering or bookkeeping might be done by so called 'independent' corporations. The application of this Act and of the other Acts passed for similar purposes and embodying the same language could be so severely limited as to render them of little worth in achieving the purposes for which they were passed."

Affirmed.