243 F.2d 351
 SOUTHERN DEVELOPMENT COMPANY, Petitioner,
v.
RAILROAD RETIREMENT BOARD, Respondent, and Brotherhood of
Railway and Steamship Clerks, Freight Handlers,
Express and Station Employees, Intervenor.
 No. 15701.
 United States Court of Appeals Eighth Circuit.
 April 18, 1957.
 
 Joseph R. Brown, Kansas City, Mo., for petitioner.
 Myles F. Gibbons, Gen. Counsel, Railroad Retirement Board, Chicago, Ill. (David B. Schreiber, Associate Gen. Counsel, and Louis Turner and Ernest O. Eisenberg, Railroad Retirement Board, Chicago, Ill., on the brief), for respondent.
 Milton Kramer, Washington, D.C. (Schoene & Kramer, Washington, D.C., on the brief), for intervenor.
 Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.
 VOGEL, Circuit Judge.
 
 
 1
 Southern Development Company, petitioner, asks this court to review and reverse a decision of the Railroad Retirement Board, respondent, holding that the petitioner is an employer under the Railroad Retirement Act of 1937, as amended, 45 U.S.C.A. §§ 228a-228v, and the Railroad Unemployment Insurance Act, as amended, 45 U.S.C.A. §§ 351-367. The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes has been allowed to intervene on behalf of respondent.
 
 
 2
 Southern Development Company, hereafter referred to as Southern, was incorporated under the laws of Missouri in 1947. It is a subsidiary of the Kansas City Southern Railway Company, hereafter referred to as Railway, which owns all of its stock excepting qualifying shares of directors. Two of Southern's five directors are directors and officers of Railway and the other three are officers of Railway. Southern is authorized to buy and sell real estate and to construct buildings and other improvements for investment purposes. It has invested in real estate and has constructed buildings for lease or sale. It has purchased unimproved acreage, parts of which have been developed for industrial sites and parts of which are being farmed by sharecrop lessees.
 
 
 3
 On January 31, 1951, Southern purchased from the Muskingum Company, a New York corporation, an office building in Kansas City, Missouri, in which Railway had rented office space since the construction of this building in 1914. Railway utilizes approximately 64% of the building's rental space. The building has eight floors. Railway occupies a part of the basement, first, second, third, fourth and sixth floors (none of the fifth floor) and all of the seventh and eighth floors. Railway's city ticket office is located on the first floor. The rest of the office building which Railway rents is used for its general offices.
 
 
 4
 During a part of the period when Railway leased office space from Muskingum Company, Railway employees furnished partial janitor service (some six janitors) for cleaning its leased office space. When Southern bought the building in 1951 it took over the operation of the building and became the employer not only of the Muskingum Company employees but also of those Railway employees who were engaged in janitor service. As of September 1, 1955, Southern had seventeen employees, all engaged in the operation of the office building. There employees performed no work other than in the operation, cleaning and repairing of the office building. The renting and supervision of Southern's other properties are handled by persons not employed by Southern and they are in no way involved herein. Southern's income from all of the properties owned and controlled by it amounts to approximately $392,433 annually. Of this amount, $209,738.96 represents the annual rental received for the office building, of which Railway pays approximately 73%. Railway's rent payments constitute approximately 39% of Southern's total income.
 
 
 5
 It was Southern's contention before the Railroad Retirement Board that '* * * it renders no services intimately related to rail transportation and furnishes no facilities intimately connected thereto, and that its operation of the office building is solely as an investment and does not warrant bringing it under the Acts.' On the other hand, it was contended '* * * that Southern is owned and controlled by Railway, that the operation of the office building constitutes more than casual service for Railway, and that Southern is subject to provisions of the Acts.' The Board held that 'furnishing and maintaining office space for Railway is clearly a 'supporting activity' essential to the transportation business of Railway. 20 C.F.R. 202.7; see also, Southern Pacific Building Company, Railroad Retirement Board Law Bulletin Number 2, p. 371, in which the Board made a like determination in 1939.' Accordingly, it was concluded by the Board that Southern performs service in connection with the transportation of passengers or property by Railway, that such service is more than casual and that Southern is and has been since February 1, 1955, an 'employer' within the meaning of the Acts.
 
 
 6
 The Railroad Retirement Board is authorized under the Acts to make employer status determinations. 45 U.S.C.A. § 228j(b); 45 U.S.C.A. § 355(c). Determinations by the Board, however, are subject to review by this court. Section 11 of the Railroad Retirement Act, 45 U.S.C.A. § 228k and Section 5(f) of the Railroad Unemployment Insurance Act, 45 U.S.C.A. § 355(f). This court's review functions are, however, limited. The Railroad Unemployment Insurance Act, 45 U.S.C.A. § 355(f) provides that:
 
 
 7
 'The findings of the Board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive.'
 
 
 8
 The Supreme Court, in Unemployment Compensation Commission of Territory of Alaska v. Aragan, 1946, 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136, laid down general rules for the scope of judicial review of agencies authorized by the Congress to administer statutes such as we have involved herein. The court there said:
 
 
 9
 'Here, as in National Labor Relations Board v. Hearst Publications, Inc., 1944, 322 U.S. 111, 131, 64 S.Ct. 851, 860, 861, 88 L.Ed. 1170, the question presented 'is one of specific application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially.' To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. The 'reviewing court's function is limited'. All that is needed to support the Commission's interpretation is that it has 'warrant in the record' and a 'reasonable basis in law'. National Labor Relations Board v. Hearst Publications, Inc., supra; Rochester Telephone Corp. v. United States, 1939, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147.'
 
 
 10
 In Gray v. Powell, 1941, 314 U.S. 402, 412, 62 S.Ct. 326, 333, 86 L.Ed. 301, the Supreme Court also said:
 
 
 11
 'Although we have here no dispute as to the evidentiary facts, that does not permit a court to substitute its judgment for that of the Director. United States v. Louisville & Nashville R. Co., 235 U.S. 314, 320, 35 S.Ct. 113, 114, 59 L.Ed. 245; Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 304, 57 S.Ct. 478, 481, 81 L.Ed. 659; Helvering v. Clifford, 309 U.S. 331, 336, 60 S.Ct. 554, 557, 84 L.Ed. 788. It is not the province of a court to absorb the administrative functions to such an extent that the executive or legislative agencies become mere fact finding bodies deprived of the advantages of prompt and definite action.'
 
 
 12
 See also Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes v. Railroad Retirement Board, 1956, 99 U.S.App.D.C. 217, 239 F.2d 37, 43.
 
 
 13
 The Railroad Retirement Board's decision should not be set aside if supported by substantial evidence, is not arbitrary and has a reasonable basis in law. Wheeler v Railroad Retirement Board, 8 Cir., 1950, 184 F.2d 173, 176; Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Stations Employes v. Railroad Retirement Board, supra. With this limited function in mine, we proceed to examine the Board's findings.
 
 
 14
 The definition of 'employer' under both Act is the same and, insofar as it may be pertinent herein, is as follows, 45 U.S.C.A. § 228a and § 351(a):
 
 
 15
 '(a) The term 'employer' means any carrier (as defined in subsection (b) of this section), and any company which is directly of indirectly owned or controlled by one or more such carriers or under common control therewith, and which operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad * * *.'
 
 
 16
 Since Southern is a subsidiary of Railway and all of its capital stock is owned by Railway and all of its directors are either directors or officers of Railway, clearly Southern is a company which meets the requirements of the first part of the statutory definition of 'employer.' That Southern is technically separate from Railway because it is a corporate entity does not remove Southern from the inclusionary language of the statute. Southern does not seem to seriously disagree with that conclusion, leaving the real or main issue to be whether the Board's decision that Southern has been engaged in the operation of equipment or facilities or in the performance of services (other than casual services or the casual operation of equipment and facilities) in connection with transportation of passengers or property by railroad is supported by substantial evidence and has a reasonable basis in law. With reference to the latter problem, the Board, in making its determination that Southern was an employer within the Act, stated:
 
 
 17
 'The evidence shows that most of the revenue-producing space in the office building is occupied by Railway; and, while Southern has invested more money in other real estate than in the office building, it has no employees other than those engaged in the operation of this building. Thus the operation of the office building is the only active enterprise in which Southern and its employees are engaged.'
 
 
 18
 The statutory language 'services in connection with transportation * * * by railroad' is not restrictive to transportation alone but includes activities in support of such transportation. In Adams v. Railroad Retirement Board, 9 Cir., 1954, 214 F.2d 534, 542, the Court of Appeals for the Ninth Circuit stated:
 
 
 19
 'The carrier could not operate without accounting services, the services of a purchasing department, or a department which cared for poles and their replacement in the overhead trolley system. The carrier could not operate without correspondence and stenographic service. It required bridge and building services, a safety engineer, and repairs for its automotive equipment and its general rolling stock.
 
 
 20
 'We hold that in furnishing these and similar services Electric was an employer within the meaning of the Act and its employees performing these services were employees.'
 
 
 21
 Despatch Shops v. Railroad Retirement Board, 1946, 80 U.S.App.D.C. 374, 153 F.2d 644, holds that a wholly owned subsidiary of a railroad which was engaged in operating railroad freight car shops came within the purview of the Acts. In so holding, the Court of Appeals for the District of Columbia made a significant statement at page 646 of 153 F.2d:
 
 
 22
 'If Despatch, in this situation, is not an 'employer' under the terms of the Act, it can be readily seen that the railroads would be free to take from under the Act virtually all of their workers whose employment is in the 'supporting' activities, through the simple expedient of setting up wholly owned corporate affiliates to perform these services. It is conceivable that everything from maintenance-of-way through engineering or bookkeeping might be done by so called 'independent' corporations. The application of this Act and of the other Acts passed for similar purposes and embodying the same language could be so severely limited as to render them of little worth in achieving the purposes for which they were passed.'[1] See also Despatch Shops, Inc., v. Railroad Retirement Board, 2 Cir., 1946, 154 F.2d 417. In Railroad Retirement Board v. Duquesne Warehouse Co., 1946, 326 U.S. 446, 454, 66 S.Ct. 238, 242, 90 L.Ed. 192, the Supreme Court stated: 'In other words if a service is involved which the railroad could perform as a part of its transportation service, it is within the present Acts. It then makes no difference that it is performed by a carrier affiliate rather than by the carrier itself. We think it plain that the definitions in question include at the very least those activities which would be transportation services when performed by a railroad but which it chooses to have performed by its affiliate.'
 
 
 23
 Maintaining a building almost exclusively for use by a railroad company for ticket selling and general offices could reasonably be considered a service connected with and supportive of rail transportation. A railroad could not operate, at least not efficiently, without ticket offices and without general offices. They are operated 'in connection with the transportation of passengers or property by railroad' and become an essential part thereof. The railroad employees who sell tickets and the clerks, stenographers, administrators and directors who make up the general office personnel must have office space within which to work. That space must be maintained, repaired, cleaned and cared for. The elevators must be operated. The furnishing of the office space and its maintenance, care and repair are certainly supportive of transportation and essential to its proper functioning. If such services were performed or furnished by Railway, they would be considered part of the transportation service and, of course, the Acts would then apply. The mere fact that these services are performed by a subsidiary, wholly owned and controlled by Railway, does not remove them from the Acts' embrace. Congress achieved that by including 'any company which is directly or indirectly owned or controlled by one or more such carriers or under common control therewith' as being within the meaning of the term 'employer'.
 
 
 24
 Southern argues here that the performance of 'casual service' is specifically excluded and that Southern's seventeen employees perform only 'casual service'. While agreeing that casual service means insubstantial service, the Board insists that the service performed by the employees of Southern is not casual and we think such view by the Board is a reasonable one. We do not believe that the services of the seventeen employees, engineers, watchmen, janitors and elevator operators, who work daily in the operation, maintenance and repair of Railway's ticket office and general offices can be termed merely casual. The Board's regulation defining casual service is in harmony with the viewpoint it expresses in its determination herein and is, to our minds, a logical and reasonable one.[2]
 
 
 25
 The Board's conclusion that Southern is an 'employer' within the meaning of the Railroad Retirement Act and the Railroad Unemployment Insurance Act and that its seventeen employees perform services other than casual in connection with the transportation of passengers or property by railroad is not unreasonable, is supported by substantial evidence and has a reasonable basis in law.
 
 
 26
 Affirmed.
 
 
 
 [1]
 In connection with this statement it will be noted from the facts herein that prior to the purchase of the building by Southern a number of Railway's employees were engaged to perform janitor services in that portion of the building occupied by Railway. Upon Southern's purchase of the building, these Railway employees were promptly transferred to Southern's payroll and although doing the same work, were thereafter deprived of the benefits of the Acts with which we are here concerned
 
 
 [2]
 ' § 202.6. Casual service and the casual operation of equipment or facilities. The service rendered or the operation of equipment or facilities by a controlled company or person in connection with the transportation of passengers or property by railroad is 'casual' whenever such service or operation is so irregular or infrequent as to afford no substantial basis for an inference that such service or operation will be repeated, or whenever such service or operation is insubstantial.'