[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-12230

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RACHAEL MAIA WINSLOW,
a.k.a. Pamela Henderson,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cr-00140-MSS-MRM-1

_____

Before ROSENBAUM, GRANT, and LAGOA, Circuit Judges.

PER CURIAM:

Rachael Maia Winslow appeals from her conviction and sentence for conspiracy to commit money laundering.  First, she argues that the district court erred in denying her motion to dismiss the superseding indictment because the statute of limitations applicable to her charged offense expired before the government filed charging documents.  Second, she argues that the district court clearly erred in applying a three-level role enhancement pursuant to U.S.S.G. § 3B1.1 because the government did not present sufficient evidence for the court to find that she was a manager or supervisor of the alleged conspiracy.  Third, she argues that the district court clearly erred in finding that she was responsible for a loss amount that exceeded the special forfeiture verdict returned by the jury.  For the reasons stated below, we affirm.

I.

We review *de novo* the district court's interpretation of a statute but review for clear error the district court's findings of fact underlying the application of that statute.  *United States v. Trainor*, 376 F.3d 1325, 1329-30 (11th Cir. 2004).  The application of a statute of limitations is a question of law reviewed *de novo*.  *Atl. Land & Improvement Co. v. United States,* 790 F.2d 853, 857 (11th Cir.1986).

When interpreting a statute, we begin by examining the text of the statute to determine whether the meaning is clear and if so,

the analysis may end there.  *Trainor*, 376 F.3d at 1330.  We give the words of a statute their ordinary, contemporary, common meaning unless there is evidence that Congress wished to define them differently.  *Id.*  When construing a statute, we assume that Congress is aware of the well-established judicial construction of certain terms, including legal terms of art.  *Id.*

Under 18 U.S.C. § 3282, "no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."  But this five-year statute of limitations for noncapital offenses may be suspended by an evidentiary request to a foreign authority if certain conditions are met.  *See* 18 U.S.C. § 3292.

Section 3292 provides that:

Upon application of the United States, filed before return of an indictment, indicating that evidence of an offense is in a foreign country, the district court before which a grand jury is impaneled to investigate the offense shall suspend the running of the statute of limitations for the offense if the court finds by a preponderance of the evidence that an official request has been made for such evidence and that it reasonably appears, or reasonably appeared at the time the request was made, that such evidence is, or was, in such foreign country.

*Id.* § 3292(a)(1).  We have stated that "[a] plain reading of § 3292 demonstrates that a district court's decision whether to suspend the

running of a statute of limitations is limited to two considerations: 1) whether an official request was made; and 2) whether that official request was made for evidence that reasonably appears to be in the country to which the request was made." *United States v. Broughton*, 689 F.3d 1260, 1273 (11th Cir. 2012). If the government satisfies both these requirements, the statute of limitations "shall" be suspended. *Id.* (quotation marks omitted). An official request includes "a letter rogatory, a request under a treaty or convention, or any other request for evidence made by a court of the United States or an authority of the United States having criminal law enforcement responsibility, to a court or other authority of a foreign country." 18 U.S.C. § 3292(d). It must reasonably appear, or reasonably appear at the time the request was made, that the requested evidence is located in that foreign country. *Id.* § 3292(a).

We have rejected a defendant's arguments that the statute of limitations should not be suspended where the commission and completion of alleged, terminated conspiracies was known before the government's application and the evidence requested or obtained by the government was not necessary, sufficient, or relevant. *See Broughton*, 689 F.3d at 1273. We stated that the district court's inquiry into the government's use of the procedural mechanism of § 3292 was constrained to whether the government established, to a preponderance of the evidence, the two elements required by statute—(1) an official request that is (2) directed to a country where the evidence may reasonably be located. *Id.*

We have applied the ordinary meaning of the common law term "preponderance of the evidence" in interpreting 18 U.S.C. § 3292, requiring that the evidence show that a fact is more probable than its nonexistence. *Trainor*, 376 F.3d at 1331. In this context, evidence constitutes anything that tends to prove or disprove the existence of an alleged fact and bears some minimum mark of trustworthiness. *Id.* The evidence submitted under 18 U.S.C. § 3292 must bear some indicia of reliability, such as statements under oath or authentication of documents, but need not be as reliable as evidence submitted at trial. *Id.* "The oath is an important indicia of reliability." *Id.* at 1332. The *ex parte* nature of § 3292 proceedings makes it especially important that the evidence bear some indicia of reliability because the defendant is not present to challenge the evidence and the court must protect her interests by evaluating the evidence. *Id.*

If both statutory considerations are met, the running of the limitations period is suspended from the date on which the official request is made to the date on which the foreign court or authority takes final action on the request. 18 U.S.C. § 3292(b). We have held that a "final action" for the purposes of § 3292(b) occurs when a foreign court or authority responds to each element of the government's official request for information. *United States v. Torres*, 318 F.3d 1058, 1065 (11th Cir. 2003). The total period of suspension under § 3292 may not exceed three years. 18 U.S.C. § 3292(c). In calculating the expiration of the statute of limitations after a period of suspension, we count the time that passes before an official request to a foreign court or authority for evidence under § 3292,

then suspend counting while the request is pending. *See Broughton*, 689 F.3d at 1276. If the foreign court or authority responds outside of the original five-year limitations period, the count resumes after receiving the response until five years total has passed. *See id.* (noting that about 47 months elapsed between the end of a conspiracy and a § 3292 request that suspended the statute of limitations, meaning 13 months remained in the limitations period for the government to bring charges after the foreign government responded, terminating about 19 months after the state of limitations would otherwise have run).

Here, we conclude that the district court did not err in denying Winslow's motion to dismiss the superseding indictment because the government's valid request to the Central Authority of Mauritius for evidence of bank accounts associated with the conspiracy suspended the statute of limitations until Mauritius's final action and the government filed a superseding indictment within the limitations period once the running of the statute resumed.

## II.

When reviewing the district court's findings about Guidelines issues, we consider legal issues *de novo*, factual findings for clear error, and the court's application of the Guidelines to the facts with due deference, which is akin to clear error review. *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010). We review the district court's imposition of an aggravating role-enhancement for clear error. *United States v. Shabazz*, 887 F.3d 1204, 1222 (11th Cir. 2018).

The Guidelines prescribe a four-level enhancement for a defendant who acted as the organizer or leader of a conspiracy that involved five or more participants or "was otherwise extensive." *See* U.S.S.G. § 3B1.1(a).  The Guidelines prescribe a three-level role enhancement for a defendant if: "(1) the defendant was a manager or supervisor, but not an organizer or leader; and (2) the criminal activity involved five or more participants or was otherwise extensive." *United States v. Sosa*, 777 F.3d 1279, 1301 (11th Cir. 2015) (citing U.S.S.G. § 3B1.1(b)).  To qualify for the three-level enhancement, the defendant is only required to manage or supervise one other participant in the criminal offense.  *Id.* (citing U.S.S.G. § 3B1.1, comment. (n.2)).  The enhancement "cannot be based solely on a finding that a defendant managed the assets of a conspiracy, without the defendant also managing or exercising control over another participant." *Sosa*, 777 F.3d at 1301 (quotation marks omitted); *see also United States v. Jennings*, 599 F.3d 1241, 1253 (11th Cir. 2010) ("control over assets alone is insufficient, the [defendant] must have had control over at least one other participant in the criminal activity").  If the defendant does not manage at least one other participant, the enhancement may never apply as a matter of law, even if the sentencing court correctly finds that the criminal scheme was "otherwise extensive." *See United States v. Williams*, 527 F.3d 1235, 1249 (11th Cir. 2008) (quotation marks omitted) (analyzing the district court's determination that a two-level aggravating role enhancement applied).

The sentencing court assesses the same seven factors listed in the commentary in relation to the four-level leadership

enhancement and the three-level managerial enhancement, distinguishing between leaders or organizers and managers or supervisors by the degree to which these factors are present. *See United States v. Valladares*, 544 F.3d 1257, 1267-68 (11th Cir. 2008). The factors include: the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, comment. (n.4).

Here, we conclude that the district court did not clearly err in finding that Winslow was a manager or supervisor in the conspiracy and in applying a three-level role enhancement under § 3B1.1(b) because the conspiracy was large enough to apply the Guideline and evidence showed that Winslow supervised multiple employees in a sales office in Spain.

### III.

We review a district court's determination of the amount of loss involved in the offense for clear error. *United States v. Maxwell*, 579 F.3d 1282, 1305 (11th Cir. 2009). The district court is in a unique position to assess the relevant evidence and estimate the loss, and thus we grant the sentencing court's loss amount determination "appropriate deference." *United States v. Cavallo*, 790 F.3d 1202, 1232 (11th Cir. 2015) (quotation marks omitted) (citing U.S.S.G. § 2B1.1, comment. (n.3)). The court must make an

independent finding of loss. *United States v. Foley*, 508 F.3d 627, 633 (11th Cir. 2007). However, the sentencing court's failure to make specific factual findings about the loss amount "will not result in reversal if the record otherwise supports the court's determinations." *United States v. Maitre*, 898 F.3d 1151, 1160 (11th Cir. 2018) (quotation marks and brackets omitted).

For the purposes of calculating the adjusted offense level pursuant to § 2B1.1(b)(1), loss is the greater of the actual loss or the intended loss. U.S.S.G. § 2B1.1, comment. (n.3(A)). The Sentencing Guidelines define "actual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." *Id.* § 2B1.1, comment. (n.3(A)(i)). The Sentencing Guidelines define "intended loss" as "the pecuniary harm that was intended to result from the offense," which includes harm that would have been unlikely to occur or impossible. *Cavallo*, 790 F.3d at 1232 (citing U.S.S.G. § 2B1.1, comment. (n.3(A)(ii))).

When determining the loss amount, the court must consider all relevant conduct. *United States v. Rodriguez*, 751 F.3d 1244, 1256 (11th Cir. 2014). This includes conduct that took place outside of a relevant limitations period. *United States v. Behr*, 93 F.3d 764, 765-66 (11th Cir. 1996). The court may consider, among other things, evidence heard at trial and evidence presented at the sentencing hearing. *United States v. Hamaker*, 455 F.3d 1316, 1338 (11th Cir. 2006). "The amount of loss must be proven by a preponderance of the evidence, and the burden must be satisfied with reliable and specific evidence." *United States v. Medina*, 485 F.3d 1291, 1304

(11th Cir. 2007) (quotation marks omitted).  The district court may hold all participants in a conspiracy responsible for the losses resulting from the reasonably foreseeable acts of co-conspirators in furtherance of the conspiracy.  *See Cavallo*, 790 F.3d at 1235.

The loss amount at sentencing may differ from a jury's forfeiture verdict, and we may not rely on a jury's forfeiture verdict when applying guidelines that vary in severity by loss amount. *Hamaker*, 455 F.3d at 1336.  Forfeiture is a form of punishment imposed to divest a defendant of ill-gotten gains while loss focuses on the harm to the victim.  *Id.* at 1337.  When a district court relies on the jury's forfeiture verdict instead of determining the appropriate loss amount, it conflates distinct concepts and calculations, under different burdens of proof, and fails to conduct the required independent investigation.  *Id.* at 1337-38.  Fundamentally, the limits of sentencing accountability are not coextensive with the scope of criminal liability.  *United States v. Hunter*, 323 F.3d 1314, 1319 (11th Cir.2003).

The Guidelines prescribe a 20-level enhancement for a theft offense that results in a loss amount that is more than $9,500,000 but less than $25,000,000.  U.S.S.G. § 2B1.1(b)(K).

Here, we conclude that the district court did not clearly err in calculating a loss amount that exceeded the special forfeiture verdict because the district court determined, through an independent investigation, that the amount of foreseeable harm to victims attributed to the conspiracy during the relevant period was greater than the amount of money in Winslow's bank accounts that was

23-12230                Opinion of the Court                11

directly traceable to her participation in the conspiracy.  Accordingly, we affirm Winslow's conviction and sentence.

**AFFIRMED.**